DECISION ISSUED AUGUST 15, 2023

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**PACIFIC NETWORKS CORP.** and **COMNET (USA) LLC**,

*Petitioners*

v.

**FEDERAL COMMUNICATIONS COMMISSON** and **UNITED STATES OF AMERICA**,

*Respondents*

No. 22-1054

---

### PETITIONERS' RESPONSE TO ORDER TO SHOW CAUSE

Pacific Networks Corp. and ComNet (USA) LLC (together, the "Companies") hereby submit this Response to the Court's October 11, 2023, Order to Show Cause (the "Order") that sealed portions of the record in this case should not be unsealed, pursuant to D.C. Cir. Rule 47.1(f)(1).

The Order directs the Companies to "specifically identify" material that should not be unsealed and "provide a specific explanation for why the material should remain sealed." The Companies have carefully reviewed the sealed materials in the record and identified certain materials that no longer must remain under seal. Other materials fall into specific categories described herein and in the

1

index attached as Exhibit A, the disclosure of which continues to pose significant competitive harms for the Companies and raise privacy concerns for the Companies' customers. Those materials remain under seal in the underlying Federal Communications Commission ("Commission") proceeding, where the Commission is positioned to address any requests for public disclosure. Accordingly, those materials should remain under seal in this case. Counsel for the government has indicated that it takes no position on the continued sealing of those materials in this case, as further explained in the government's separate response.

I. **THE SEALED MATERIALS IN THIS CASE WERE ORIGINALLY SUBMITTED TO THE COMMISSION UNDER THE COMMISSION'S RULES FOR CONFIDENTIAL INFORMATION**

This case arises out of a Commission proceeding, in which the Commission directed the Companies to show cause why their domestic and international Section 214 authorizations should not be revoked, along with other related Commission actions. In response to the Commission's orders, the Companies filed lengthy responses with detailed explanations regarding their ownership, business practices, customer relationships, and other sensitive information. The Companies filed the sealed materials subject to requests for confidential treatment under the Commission's rules implementing FOIA Exemption 4. *See* 47 C.F.R. §§ 0.457(d), 0.459; *see also* 5 U.S.C. § 552(b)(4).

The Commission's rules permit parties filing information protected from disclosure with a request that the "information not be made routinely available for public inspection." 47 C.F.R. § 0.459(a)(1). The Commission's rules require parties to specifically identify the information for which confidential treatment is sought, explain the degree to which the information is commercially sensitive such that its disclosure would result in substantial harm, and provide other related information. *Id.* § 0.459(b). Moreover, the Commission's rules create procedures for resolving oppositions to requests for confidential treatment, *id.* § 0.459(d), as well as requests for inspection under FOIA, *e.g.*, *id.* § 0.461(d)(3). The Commission's procedures encourage companies to be transparent and forthcoming when disclosing information to the Commission to better aid the Commission in making informed decisions relevant to rulemaking, enforcement, and adjudicatory functions.

Here, the Companies submitted a confidentiality request ("Request") to the Commission on January 12, 2022, pursuant to Section 0.459 of the Commission's rules. The Request sought to keep highly confidential and sensitive proprietary information responsive to information requests from the Commission held in strict confidence to ensure that the Commission would not make the information available for public inspection. The Request concluded by respectfully asking the information to be kept confidential *indefinitely* given the sensitive nature of the

information and the risks inherent in any unauthorized disclosure. The Commission received no objections to that request and has not received any requests to review application of the FOIA exemption to these materials, nor has it otherwise made any of the sealed material available for public inspection. The Commission's procedures remain available should any person submit a request to inspect the sealed materials.

The sealed materials in this case consist entirely of the Companies' submissions to the Commission based on the Commission's procedures for handling confidential information and the Commission's own orders citing that confidential information. Sealed and redacted versions of that information were filed as attachments to certain filings in the record and included in the copies of documents filed in the joint appendix (though the Companies did not cite this confidential information in their briefs), and the Commission briefly cited some of the confidential information in its response brief. The Court's opinion did not rely upon any of the confidential information.

## II. THE COMPANIES HAVE IDENTIFIED CERTAIN MATERIALS THAT CAN BE UNSEALED, BUT REMAINING MATERIALS SHOULD REMAIN UNDER SEAL TO AVOID COMPETITIVE HARM TO THE COMPANIES AND TO PROTECT THE PRIVACY OF THEIR CUSTOMERS

After the Court issued the Order, counsel for the Companies carefully reviewed the sealed materials in the record of this case to identify information that

could be unsealed. Counsel identified some information that no longer must remain under seal; other information continues to warrant confidential treatment under this Court's six-pronged test, known as the *Hubbard* factors, which weighs the need for secrecy with the need for disclosure. *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980).

The index attached as Exhibit A lists and describes every item of sealed information in the record. As noted above, the index includes parts of the record that no longer need to be sealed, generally because the passage of time has rendered this specific information less sensitive and as a result disclosure of the material will not harm the Companies, the Commission, or any third party. The copy of the joint appendix attached as Exhibit B includes that information without redactions, and the index notes the other parts of the Court's docket where the relevant documents in the joint appendix also appear. (For example, the Commission's Order on Revocation and Termination appears in the joint appendix, and the index notes where the relevant pages also appear in Exhibit A to the petition for review, Exhibit E to the emergency motion for stay, and in the "Underlying Decision in Case" docket entry.)

For the information that should remain under seal, all of the *Hubbard* factors favor continued sealing. The six factors are (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents;

(3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *Id*. at 315.

Regarding the first factor, unsealing the records would not serve any need for public access. No party has requested access to any sealed portion of the record at the Commission or the Court. Moreover, and critically, the decision of this Court did not rely on any such confidential information in reaching its conclusions. As such, the public interest in such disclosure is diminished as it is not necessary to understand the facts underlying the Court's rationale for any of its conclusions. The need for public access to the documents in this Court's docket is also significantly diminished by the fact that the same information is subject to the confidential-treatment procedures in the Commission's underlying proceeding, as discussed above. If any party wanted access to any sealed material, it could apply to the Commission in the first instance to review application of the exemption, and the Commission's existing procedures would provide an orderly resolution. It is thus unnecessary for this Court to unseal the record to ensure public access, if a need for public access is ever expressed.

Regarding the second factor, to the best of the Companies' knowledge, the information and documentation for which confidential treatment is sought has

6

never been publicly disclosed. Disclosure by the Companies has been limited to those with a need to know, who are subject to professional or other confidentiality obligations, and to the Commission. To date, disclosure of the information and documents subject to this request has been limited to (1) certain employees of the Companies and its subsidiaries, (2) their outside legal counsel, and (3) the Commission under the protection of the Commission's confidential-treatment procedures.

Regarding the third factor, the Companies object to the disclosure of the materials that should remain under seal, as the information and documents would not otherwise be made available to the public, and public disclosure would expose information about the Companies' information security and network architecture, location of and details regarding access to U.S. customer records, confidential communications with the Department of Justice, and other proprietary information.

Regarding the fourth factor, disclosure of the sealed information could endanger the Companies' operations and subject private customer information to disclosure, and would also make such information available to competitors, which could undermine the Companies' business strategy and that of their affiliates. Separately, disclosure of the identities of the Companies' customers could subject the Companies and their subsidiaries to substantial risk of unauthorized access to

7

customer information, and thus place the security of these customers' private information at risk.

Because of the volume of redacted material, particularly in the underlying decision in the case, the Companies have categorized each sealed portion of the record based on its content in this filing and in the index in Exhibit A. In some cases, multiple categories may apply: For example, the Commission's Order on Revocation and Termination may cite network architecture information that appeared in a confidential communication with the Department of Justice, thus constituting both Confidential Network information and a Confidential Government Communication. The categories used in Exhibit A, and the rationales for keeping each category of material sealed, are as follows:

**Confidential Customer Information:** This information consists of the identity of specific customers of the Companies, or specific technology or network architecture used by customers. Unsealing this information would (1) harm the Companies by disclosing confidential customer identities that would otherwise be kept secret from the Companies' competitors and (2) harm the Companies' customers by revealing specific equipment or services used, revealing competitively valuable information and potentially exposing these customers to targeted security breaches. Even though the Companies have ceased providing common carrier services to their customers, this information would still be

8

valuable to competitors, and would also be valuable to parties that may want to target these customers for cybersecurity attacks by gaining information about the customers' preferred technology and methods of operation.

**Confidential Government Communications:** This information consists of communications with the federal government relating to the Companies' network configuration, information technology ("IT") security policies, or other proprietary business information.  The Companies engaged in these communications with the government on the understanding that the confidentiality of the underlying information would be preserved.  Unsealing this information would harm the Companies by disclosing technical details of how the Companies and their affiliates provide services and details of the Companies' IT security policies, which would be valuable to competitors and parties seeking to understand how similar services are provided.

**Confidential IT Policy:** This information consists of extensive and detailed quotations from the Companies IT security policies, including the substantive requirements of those policies and how those policies are managed.  As a general matter, communications service providers keep such policies highly confidential, as public disclosure of these policies could compromise the service provider's network and customer information contained in the network.  That is the case here, where the Companies provided their IT security policies in response to specific

9

information requests from the Commission, but did so in reliance on the Commission's confidential-treatment procedures. Disclosure of details of the Companies' IT security policies would disclose how these policies are managed and potential vulnerabilities, requiring the Companies and their affiliates to expend significant resources protecting against exploitation of this information.

**Confidential Network Information:** This information consists of details of equipment used by the Companies (sometimes identifying specific types of equipment or technical protocols used), as well as the locations of U.S. customer information, including the entities and individuals that may have access to such information. Unsealing this information would reveal competitively sensitive information and potential vulnerabilities in the Companies' networks, providing parties with a roadmap that would enable them to find, access and exploit U.S. customer information. This last impact would be particularly unfortunate, given that one of the Commission's most significant priorities in issuing the Order on Revocation and Termination was to protect U.S. customer information.

**Confidential Miscellaneous:** This information does not relate to specific customer or technical information, but instead consists of references to the Companies' vendor agreements or limited liability company agreement. The Companies consider this information proprietary and confidential because it provides competitively valuable information about how they structure their

10

corporate management and business operations. Disclosure of this information would hurt the Companies because competitors would learn extensive details about what functions have been contracted to third parties, as well as information about their internal management, all of which would normally be protected from disclosure.

    Regarding the fifth factor, the D.C. Circuit has stated that prejudice can include real-world "consequences" from the publication of information. *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 120 (D.C. Cir. 2021) ("*CNN*"). Using this as a guide, unauthorized disclosure of the information and documents regarding the scope and capability of the business of the Companies and subsidiaries, as well as information and documentation about business partners and customers, could lead to significant harm to the Companies and their customers, and lead to competitive disadvantages in the marketplace, as noted above.

    Finally, the sixth factor also weighs definitively in favor of keeping the record sealed. The Companies included confidential portions of the filings in the joint appendix because they were part of the Companies' filings at the Commission. The Companies did not, however, rely on this information in their briefing or argument. Separately, as discussed above with respect to the first factor, this Court's order likewise did not discuss confidential information

11

requiring any redactions. The confidential information was thus provided out of necessity, but was not crucial to disposition of the case, and thus the sixth factor weighs in favor of keeping the records sealed. In *CNN*, the Court found this sixth factor to be the "most important" element cutting against disclosure. *CNN*, 984 F.3d at 120.

*   *   *

The Companies thus respectfully request that the Court keep the records in this case sealed, with the exception of the materials identified for unsealing in Exhibit A and unredacted in Exhibit B. The *Hubbard* factors demonstrate the continued need for confidential treatment, and the Commission's confidential-treatment procedures are the best venue for resolving any interested party's requests for access to the information.

December 13, 2023

*/s/ Christopher J. Wright*
Christopher J. Wright
HWG LLP
1919 M St., NW, 8th Floor
Washington, DC  20036
(202) 730-1300
cwright@hwglaw.com

Respectfully submitted,

*/s/ Jeffrey Carlisle*
Jeffrey Carlisle
Stephen Coran
Lerman Senter PLLC
2001 L Street, NW, Suite 400
Washington, DC  20036-4945
(202) 429-8970
jcarlisle@lermansenter.com

*Counsel to Petitioners*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with the requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in 14-point Times New Roman font.  I further certify that the foregoing document contains 2,382 words according to the word-count feature of Microsoft Word.

/s/ Christopher J. Wright
Christopher J. Wright

## CERTIFICATE OF SERVICE

I certify that on this 13th day of December, 2023, the foregoing document was filed via CM/ECF. Service was accomplished on all parties or their counsel of record via CM/ECF.

/s/ Christopher J. Wright
Christopher J. Wright